## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Crestmark Bank,

              Plaintiff,       Case No. 14-cv-11595
                                  Hon. Judith E. Levy
v.                          Mag. Judge David R. Grand

Electrolux Home Products, Inc.,

              Defendant.

_____/

## OPINION AND ORDER DENYING [3] DEFENDANT'S MOTION TO STAY OR TRANSFER

This is a contract dispute between a creditor (plaintiff here) and a customer (defendant here) of a company that supplied parts for home appliances. Pending before the Court is defendant's motion to stay this case in favor of an action in North Carolina state court, or, alternatively, to transfer this case to the United States District Court for the Western District of North Carolina. For the reasons discussed below, the Court will deny the motion.

I.     Background

In 2008, defendant Electrolux approved Tarheel Plastics, LLC ("Tarheel") as a supplier of plastic parts for the manufacture of defendant's home appliances.   Tarheel is located in North Carolina. Defendant provided Tarheel with certain tooling and molds to manufacture the parts.   On December 28, 2011, defendant recorded its security interest in certain "Tools" possessed by Tarheel.   (Dkt. 3-2, Ex. B to Defendant's Motion to Stay 2).

Defendant also supplied Tarheel with resin, the raw material used to make the plastic parts.   Defendant and Tarheel agreed – although it is unclear whether this agreement was in writing – that defendant would periodically set off the resin costs against what defendant owed on outstanding invoices from Tarheel.   The setoffs did not always correspond to the cost of the resin actually used in the parts for which defendant owed payment.

Plaintiff Crestmark was Tarheel's primary lender.   The loans were secured by a security interest in "[a]ll assets of the Debtor [sc. Tarheel] now owned or hereafter acquired and wherever located."   (Dkt. 3-3, Ex.

C to Def.'s Mot. 2).  Plaintiff recorded its security interest on November 5, 2012.

Defendant notified plaintiff, by letter dated March 1, 2013, of defendant's security interest in Tarheels' tooling.  Soon after, by letter dated March 11, 2013, defendant released any security interest it held in Tarheel's accounts receivable or inventory.  (Dkt. 1-3, Ex. B to Notice of Removal 15).

Tarheel ceased it operations in late summer or early fall of 2013. Defendant sought immediate possession of the tooling, molds, and inventory held by Tarheel in North Carolina.   Plaintiff disputed defendant's right to take the tooling, molds, and inventory, until defendant had paid all of its outstanding invoices, amounting to approximately $1,109,000.  Defendant maintained it was entitled to set off remaining resin costs against the outstanding invoices.

To resolve their disputes, plaintiff, defendant, and Tarheel executed an Accommodation Agreement on October 4, 2013.   (Dkt. 3-5, Ex. E to Def.'s Mot.).  As part of the Agreement, plaintiff relinquished any interest in the tooling defendant owned; in turn, defendant relinquished any interest in "any inventory or equipment other than"

3

the tooling defendant owned.  The Agreement further established that 1) defendant would immediately pay plaintiff $100,000, in exchange for the finished parts that had not yet been shipped to defendant; 2) defendant would wire to plaintiff $332,000 of the outstanding accounts receivable, to be held in escrow according to the terms of an Escrow Agreement; 3) upon payment of the $332,000, defendant would have the right to take immediate possession of its tooling; and 4) defendant could take possession of the resins and other raw materials it had supplied to Tarheel.

Importantly, the Agreement also limits defendant to setting off only the costs of resin or other raw materials 1) supplied to Tarheel and 2) actually used in producing parts for defendant.  Defendant agreed to provide, within 5 days of the Agreement's execution, a reconciliation of the outstanding invoices, including reasonable support for any setoffs claimed.

The Accommodation Agreement provides that it will be governed by Michigan law and that jurisdiction "will be proper in federal district court or in state court in Oakland County [Michigan]."

4

Also on October 4, 2013, plaintiff, defendant, and the escrow agent (the same law firm serving as plaintiff's counsel) executed the Escrow Agreement referred to in the Accommodation Agreement. (Dkt. 1-6, Ex. E to Notice of Removal 15). The Escrow Agreement governs the holding and delivery of the $332,000 specified in the Accommodation Agreement. The Escrow Agreement contains mandatory choice-of-law and forum selection clauses, pursuant to which 1) Michigan law governs the Escrow Agreement, and 2) "any action, suit or proceeding arising out of [the] Escrow Agreement or the transactions between [the parties] contemplated by [the] Escrow Agreement" must be brought in the Eastern District of Michigan or in a state court in Oakland County, Michigan.

Defendant paid the $100,000 to plaintiff and the $332,000 into escrow, as required by the Accommodation Agreement. According to plaintiff, defendant then repeatedly failed to provide the reconciliation required by the Accommodation Agreement. Instead, plaintiff alleges, defendant sought to set off the entire cost of resin and other raw materials, in violation of the Accommodation Agreement's express limitations on allowable setoffs.

5

The parties agree that, at some point, defendant took possession of the tooling and molds, and at least some of the resin.

On February 21, 2014, the escrow agent filed an interpleader action in Oakland County Circuit Court, Michigan, naming both parties here as defendants.

On February 28, 2014, defendant here filed an action in North Carolina Superior Court in Mecklenburg County, naming plaintiff here, the escrow agent, and Tarheel as defendants (the "North Carolina action"). (Dkt. 9-1, Ex. 4 to Plaintiff's Supplemental Brief to Response to Defendant's Motion to Stay 16-21). In that action, defendant seeks, among other relief, declaration of its rights to the setoffs and the escrow funds, possession of the escrow funds, recovery of the $100,000 already paid to plaintiff, and damages for Tarheel's alleged breach of contract. Defendant also alleges plaintiff engaged in unfair business practices and tortiously interfered with defendant's business relationship with Tarheel by preventing return of the tooling and molds, thereby forcing defendant to enter the Accommodation and Escrow Agreements.

On March 18, 2014, plaintiff answered the interpleader complaint and filed a crossclaim against defendant, alleging defendant had

breached the Accommodation Agreement by failing to provide the required reconciliation and by claiming setoffs prohibited by the Agreement. Plaintiff claims a right to the escrow funds based on defendant's alleged breach.

On April 7, 2014, the state court granted the escrow agent's motion to deposit the escrow funds with the court and dismissed the agent from the interpleader action. On April 22, 2014, defendant removed the interpleader action to this Court, and filed this motion on April 29, 2014.

On June 16, 2014, after the parties had fully briefed this motion, but before the hearing, plaintiff removed the North Carolina action to the United States District Court for the Western District of North Carolina. At the hearing on this motion, defendant informed the Court of its intent to move to remand the North Carolina action back to the North Carolina state court.

II.    Analysis

A.    Motion to Stay

Defendant first asks the Court to stay this matter in favor of a state court action in North Carolina. In *Colorado River Water*

*Conservation District v. United States*, 424 U.S. 800 (1976), the Supreme Court established that a federal court may, in exceptional circumstances, abstain from exercising its jurisdiction when parallel proceedings are pending in a state court, in the interests of "judicial economy and federal-state comity." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998).

"The threshold question in *Colorado River* abstention is whether there are parallel proceedings in state court." *Bates v. Van Buren Township*, 122 F. App'x 803, 806 (6th Cir. 2004). The relevant state court action in this instance is the suit filed in North Carolina by defendant against plaintiff and Tarheel Plastics. Because plaintiff has since removed that action to federal court, there is no longer a parallel state court action, and *Colorado River* abstention does not apply. *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984) ("A necessary requirement for application of this *Colorado River* doctrine, however, is the presence of a parallel, state proceeding"). Therefore, although the Court would otherwise find that abstention is not warranted here, the lack of a parallel state court action alone compels the denial of defendant's motion to stay as moot.

B.     Motion to Transfer

In the alternative, defendant seeks to transfer this case to the Western District of North Carolina, pursuant to 28 U.S.C. § 1404(a). Since the state court action has been removed to the Western District of North Carolina, the Court must determine whether the first-to-file rule applies here.

1.     First-to-file rule

"The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001) (citation and internal quotation marks omitted). "Courts have identified three factors to consider in determining whether to invoke the first-to-file rule: (1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." *Clear!Blue, LLC. v. Clear Blue, Inc.,* 521 F. Supp. 2d 612, 614-15 (E.D. Mich., November 7, 2007).

9

The parties do not dispute that this action and the action in North Carolina involve nearly identical parties and issues.  These two factors thus favor invoking the first-to-file rule.

The parties do, however, dispute the chronology of the actions. Plaintiffs maintain this case was filed first: the interpleader action was filed on Feb. 21, 2014, before the North Carolina action was filed on Feb. 28, 2014.  Defendant argues that the North Carolina action was filed first, as that action was filed before plaintiff's crossclaim in the interpleader action was filed on March 18, 2014.  The central question, then, is which date counts for purposes of the first-to-file rule: the filing of the interpleader action, or the filing of plaintiff's crossclaim in the interpleader action?

### 2.    Interpleader

Defendant's position depends on characterizing the interpleader action and plaintiff's crossclaim as two distinct actions.  Defendant goes so far as to state that "[t]he Interpleader action is over" because the escrow agent, which filed the interpleader complaint, "was dismissed from the action."  (Dkt. 7, Defendant's Reply 5).  This mischaracterizes the nature of an interpleader action.

10

Interpleader "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." *United States v. High Tech. Products, Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (citation and internal quotation marks omitted) (emphasis added).

> An interpleader action typically proceeds in two stages. During the first stage, the court determines whether the stakeholder has properly invoked interpleader . . . During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial . . .
>
> [I]n a typical interpleader action, a disinterested stakeholder would deposit with the court the fund or property at issue and be discharged from further liability during the first stage of the action, before the court determined the relative possessory and ownership rights of the parties and distributed the fund or property.

*Id.* at 641 & n.2 (citing WRIGHT, MILLER, & KANE, FEDERAL PRACTICE & PROCEDURE § 1714).

The interpleader action in this case is not "over." The first stage has concluded with the deposit of the funds in state court and the dismissal of the escrow agent. The state court's order clearly indicated

11

that the action remained pending – hardly surprising, since the court had not yet determined the parties' rights to the interpleaded funds. The second stage of the action began in state court "via normal litigation processes": plaintiff filed a crossclaim alleging its right to the funds, and the state court authorized the parties to begin discovery. All of this activity was part of the interpleader action filed on Feb. 21, 2014 – the same interpleader action defendant removed to this Court.

### 3.   *Horton Archery*

Defendant has submitted two cases in support of its position that the date of plaintiff's crossclaim, not of the interpleader complaint, is the relevant date for purposes of the first-to-file rule.

The first is an unpublished case, *Horton Archery, LLC v. Am. Hunting Innovations, LLC*, No. 09-1604, 2010 WL 395572, at *3-5 (N.D. Ohio Jan. 27, 2010). In that case, the defendants had filed a patent infringement action in the Southern District of Iowa on April 29, 2009. The plaintiff was not a party to that litigation. The plaintiff then filed a complaint in the Northern District of Ohio on July 14, 2009, seeking to invalidate the same patent at issue in the Iowa action. The defendants then amended the Iowa complaint on Sept. 4, 2009, adding plaintiff as a

12

party.  The question before the court in Ohio was which action had been filed first: the Ohio action, filed July 14, or the Iowa action, filed earlier, but to which plaintiff had only been added later, on Sept. 4?

The court determined that the Iowa action had been filed first. Relying on a number of decisions, including one from the Sixth Circuit, *Barber-Greene Co. v. Glaw-Knox Co.*, 239 F.2d 774, 778 (6th Cir. 1957), the court adopted the principle that "the critical inquiry for first-to-file purposes is which court first obtains possession of the subject of the dispute, not the parties of the dispute."  *Horton Archery*, 2010 WL 395572, at *4 (citation and internal quotation marks omitted).  Because the subject matter of the two lawsuits – the validity and infringement of the same patent – was "identical," the court concluded that the Iowa action was first-filed.  *Id.* at *5.

*Horton Archery* supports plaintiff's position here, not defendant's. The subject matter of the interpleader action is identical to that of the North Carolina action.  In fact, defendant has repeatedly argued this. (*E.g.*, Dkt. 7, Defendant's Reply 2-3).  The interpleader action concerns the rights of the parties to the escrow funds.  Those funds represent the minimum amount, as calculated by plaintiff and Tarheel Plastics, that

13

defendant owes on the outstanding accounts receivable.  To determine the parties' respective rights to the escrow funds, the Court necessarily must determine what defendant owes on Tarheel's outstanding accounts receivable, as well as the amount of any setoffs defendant may claim against what it owes.  And to determine the allowable setoffs, the Court necessarily must interpret the Accommodation Agreement and resolve any challenges defendant may raise to the validity of that Agreement.

Defendant brought the North Carolina action seeking a declaration of its right to certain setoffs against the amounts it owes on the outstanding accounts receivable.  Defendant also asserts a right to the escrow funds and challenges the validity of the Accommodation Agreement.  All of these issues must be determined in the interpleader action as well.  *Horton Archery* thus supports a finding that the interpleader action was filed first.

### 4.   *Sun Life*

The second case, *Sun Life and Health Insurance Co. v. Colavito*, No. 11-5225, 2014 WL 1613201 (S.D.N.Y. Mar. 28, 2014), does not involve the first-to-file rule.  The plaintiff, an insurance company, filed

14

an interpleader action in diversity against several defendants who claimed to be beneficiaries of a life insurance policy. The case was before the court on one defendant's motion for summary judgment. The nonmovants had brought a crossclaim against the movant, claiming that, to the extent that the movant was a beneficiary of the policy, she had been unjustly enriched. The nonmovants thus sought a constructive trust over the policy proceeds.

The court found it "questionable" whether it had supplemental jurisdiction over the crossclaim, but ultimately did not decide the issue. The court questioned whether the crossclaim and the interpleader action "derive[d] from a common nucleus of operative fact" and thus formed part of the same case or controversy. The court noted that the crossclaim "does not address the sole issue raised in the Interpleader Complaint – i.e., who is the beneficiary of the proceeds of the policy." Rather, the crossclaim challenged the movant's right to the proceeds based not on the policy itself, but on a separation agreement between the deceased and the nonmovant.

*Sun Life* does not change the analysis in this case. There is no question that the Court has jurisdiction over plaintiff's crossclaim in the

15

interpleader action, and defendant has not argued otherwise. The interpleader action was brought pursuant to the Escrow Agreement, which in turn is referenced in the Accommodation Agreement. The issue in the interpleader action is which party is entitled to the escrow funds. The parties' rights to the escrow funds can only be determined through the interpretation of the Accommodation Agreement. Plaintiff's crossclaim concerns its right, under the Escrow and Accommodation Agreements, to the escrow funds. The crossclaim and the interpleader clearly arise from the same nucleus of operative facts, and are thus part of the same case, originally filed on Feb. 21, 2014 – one week before defendant filed its claims in North Carolina.

The relevant date for purposes of the first-to-file rule, then, is the date the interpleader complaint was filed: Feb. 21, 2014.

### 5.   Equitable considerations

District courts may "dispense with the first-to-file rule where equity so demands." *Id*. Circumstances that justify dispensing with the rule include "inequitable conduct, bad faith, anticipatory suits, forum shopping or significant policy considerations." *Natron Corp. v.*

*Quantum Research Group, Ltd.*, 473 F. Supp. 2d 790, 795 (E.D. Mich. 2007) (quoting *Zide*, 16 F. App'x at 437).

None of these circumstances counsels dispensing with the rule here.  If anything, they cut in the opposite direction.  Defendant agreed to a mandatory forum selection clause that requires "any action, suit, or proceeding arising out of [the] Escrow Agreement" to be brought in either Michigan state court or in the Eastern District of Michigan. (Dkt. 1-2, Ex. A to Notice of Removal 13).  Defendant also agreed to a mandatory choice-of-law clause establishing that the Accommodation Agreement would be governed by Michigan law.  (Dkt. 1-3, Ex. B to Notice of Removal 20).  Finally, defendant agreed to a permissive forum selection clause specifying jurisdiction in federal or state court in Oakland County, Michigan.

III.   Conclusion

Accordingly, defendant's motion to stay these proceedings in favor of the North Carolina action is DENIED AS MOOT; and defendant's motion in the alternative to transfer this case to the Western District of North Carolina is DENIED.

IT IS SO ORDERED.

17

Dated: August 11, 2014                    s/Judith E. Levy
Ann Arbor, Michigan                       JUDITH E. LEVY
                                          United States District Judge


## CERTIFICATE OF SERVICE


    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 11, 2014.


                                     s/Felicia M. Moses
                                       FELICIA M. MOSES
                                       Case Manager